**CIRCUIT COURT OF FAIRFAX COUNTY**

Commonwealth of Virginia

v.

Jesse Rene Najera

February 1, 2005

Case Nos. K 106590 and K 106591

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before me on the defendant's motion to suppress. Because I find for the reasons outlined below that the initial traffic stop was without basis, the motion to suppress is granted.

On March 21, 2004, Officer Gary Allen of the Fairfax County Police Department stopped the defendant, who was operating a motor vehicle. The reasons for the stop were less than clear from the officer's testimony. On direct examination (Trans. p. 10) in the Commonwealth's case, Officer Allen testified that "I observed the front running light or it's – the front running light turn signal has a light and the left side-marker light was out." With respect to the "first of the lights," the officer testified that "it's directly below the driver's side headlight." He further testified that the "marker light" was on "the left front fender on the driver's side." He testified that he initiated a stop for defective equipment "for that light [not "those lights"] not being on or not working." Based on the above, I find that the officer testified that he stopped the defendant only because the front left side marker light was out.

On cross-examination, the officer testified that "the parking light, which acts as the hazard light, and the turn signal, which is directly below the headlight on the driver's side, and the side-marker light on the driver's side fender" were out. The officer further testified that, as to the parking

light and the turn signal, the vehicle was not being operated in a manner that would have caused those lights to come into play, i.e., the vehicle was not "parking" or attempting to use hazard lights or turning. Rather, the officer testified that they were not "operational." Trans., pp. 23-24. The officer further testified that parking lights (Trans. p. 25) and marker lights (Trans. p. 40) are not required by the Code of Virginia, but that, if present on a vehicle, they are required to be in working order.

No testimony was offered as to the time of day or night when the stop occurred, or (if during the day) how the officer knew the lights were not "operational." After trial, the parties forwarded to the Court a tape of the stop, but, because it was not offered into evidence during the hearing, I have not reviewed it.

The Commonwealth did not argue that the officer was performing a community caretaker function by stopping a vehicle to advise its driver of problems with his car that, while not a violation of rules of the road, would be helpful for vehicle safety. Rather, in its post-hearing memorandum, the Commonwealth asserts that "a vehicle driven in the Commonwealth must have at least two headlights (§ 46.2-1011) and one brake light (§ 46.2-1014). A vehicle is not required to have additional lights. However, if they have such lights, they must be operable." I find that while that is true of some lights, it is not so under the Code for the lights at issue here.

As the Commonwealth notes, § 46.2-1003 provides that it is unlawful for a vehicle to have any device or equipment mentioned in § 46.2-1002 which is defective. The Commonwealth recognizes that "the type of equipment referenced in § 46.2-1002 includes any 'lighting device . . . for which approval is required by any provision of this chapter'." The Commonwealth further contends that the type of lights at issue in this case must be approved for use under this chapter pursuant to § 46.2-1020. It is this last contention that I find that is not the case.

Many provisions of the Code following § 46.2-1002 specifically require equipment to be a "type approved by the Superintendent [of the Department of State Police of the Commonwealth]" and therefore subject to the provisions of §§ 46.2-1003 and 46.2-1002. For example, § 46.2-1011 requires two headlights "as approved by the Superintendent"; § 46.2-1012 requires motorcycle headlights "of a type that has been approved by the Superintendent" and auxiliary headlights "of a type approved by the Superintendent"; § 46.2-1013 requires certain tail lights "of a type approved by the Superintendent"; § 46.2-1014 requires brake lights "of a type approved by the Superintendent"; § 46.2-1014.1 requires

a supplemental center high mount stop light "of a type approved by the Superintendent"; § 46.2-1015 requires bicycles and mopeds operated at night to have a red reflector light "of a type approved by the Superintendent"; § 46.2-1016 requires, when certain reflectors are installed, that they be "of a type, size, and color approved by the Superintendent"; § 46.2-1017 requires amber lights "of a type approved by the Superintendent"; § 46.2-1018 requires marker lights on long vehicles to be "of a type approved by the Superintendent"; and § 46.2-1019 requires any spotlight to be "of a type approved by the Superintendent."

The Commonwealth contends that the same requirement of approval by the Superintendent applies to lights permitted under § 46.2-1020, which statute it asserts covers the defendant's lights. But that statute contains no such requirement. Therefore the defendant's lights, while permitted under § 46.2-1020, do not have to be "approved by the Superintendent." Therefore they are not lighting devices governed by § 46.2-1002 and their defective condition is not prohibited by § 46.2-1003.

There being no violation of the Code and no community caretaker function being employed, the stop of the defendant by Officer Allen violated *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The defendant's motion to suppress is granted on that grounds and denied on all other grounds advanced. The search thereafter is suppressed.